PILLSBURY WINTHROP SHAW PITTMAN LLP
ROBERT L. WALLAN (SBN 126480)
robert.wallan@pillsburylaw.com
MARIAH L. BRANDT (SBN 224076)
mariah.brandt@pillsburylaw.com
725 South Figueroa Street, Suite 2800
Los Angeles, CA 90017-5406
Telephone:     213.488.7100
Facsimile:      213.629.1033

Attorneys for Plaintiff IN-N-OUT BURGERS

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN-N-OUT BURGERS, a California corporation,<br><br>            Plaintiff,<br><br>    vs.<br><br>ZURICH AMERICAN INSURANCE COMPANY,<br><br>            Defendant. | Case No. 8:21-CV-00406-JLS-ADS<br><br>**PLAINTIFF IN-N-OUT BURGERS' RESPONSE TO ORDER TO SHOW CAUSE AS TO WHY THIS ACTION SHOULD NOT BE DISMISSED**<br><br>Judge:         Hon. Josephine L. Staton<br>Mag. Judge:  Hon. Autumn D. Spaeth |

4840-4699-9791

IN-N-OUT BURGERS' RESPONSE TO ORDER TO SHOW CAUSE WHY THIS ACTION SHOULD NOT BE DISMISSED
Case No. 8:21-CV-00406-JLS-ADS

# TABLE OF CONTENTS

Page

I. INTRODUCTION. ........................................................................................... 1

II. STATEMENT OF FACTS .............................................................................. 2

III. CHOICE OF LAW ......................................................................................... 3

IV. ARGUMENT .................................................................................................. 4

    A. California's Bright Line Rule Prohibiting the Application of Claim Splitting to Claims Arising After the Filing of the Initial Complaint in the First Action Warrants No Dismissal ............................................... 4

    B. Ninth Circuit Law is in Accord with California Law and Does Not Authorize Dismissal Here. ..................................................................... 6

    C. Independent Claims Arising from Separate Breaches of Two Different Contracts Cannot Constitute Claim Splitting .......................... 9

    D. In Any Event Consolidation is the Appropriate Remedy Here ............. 10

V. CONCLUSION ............................................................................................. 11

i

IN-N-OUT BURGERS' RESPONSE TO ORDER TO SHOW CAUSE
WHY THIS ACTION SHOULD NOT BE DISMISSED
Case No. 8:21-CV-00406-JLS-ADS

4840-4699-9791

# TABLE OF AUTHORITIES

Page

Cases

*Adams v. Cal. Dep't of Health Servs.*,
    487 F.3d 684 (9th Cir. 2007) ................................................................. 7, 8, 11

*Allied Fire Protection v. Diede Constr., Inc.*
    127 Cal. App. 4th 150 (2005) ............................................................................ 4

*Fujifilm Corp. v. Yang*,
    223 Cal. App. 4th 326 (2014) ......................................................................... 10

*Hong Sang Mkt., Inc. v. Peng*,
    20 Cal. App. 5th 474 (2018) ............................................................................. 4

*Howard v. City of Coos Bay*,
    871 F.3d 1032 (9th Cir. 2017) ...................................................................... 7, 8

*In re Don Rose Oil, Inc.*,
    614 B.R. 358 (Bankr. E.D. Cal. 2020) ........................................................... 10

*L.A. Branch NAACP v. L.A. Unified Sch. Dist.*,
    750 F.2d 731 (9th Cir. 1984) (en banc) ........................................................... 4

*Lennar Mare Island, LLC v. Steadfast Ins. Co.*,
    No. 212CV02182KJMKJN, 2016 WL 3197390 (E.D. Cal. June 8,
    2016) ............................................................................................................ 8, 9

*Media Rights Technologies, Inc. v. Microsoft Corp. ("Microsoft")*,
    922 F.3d 1014 (9th Cir. 2019) ......................................................................... 7

*Planning & Conservation League v. Castaic Lake Water Agency*,
    180 Cal. App. 4th 210 (2009) ........................................................................... 4

*Pollok v. Vanguard Fiduciary Tr. Co.*,
    803 F. App'x 67 (9th Cir. 2020) .................................................................. 3, 4

*Pollok v. Vanguard Mktg. Corp.*,
    No. CV 18-1099-JLS (JCG), 2018 WL 6118602 (C.D. Cal. May 29,
    2018 ................................................................................................................. 6

ii

IN-N-OUT BURGERS' RESPONSE TO ORDER TO SHOW CAUSE
WHY THIS ACTION SHOULD NOT BE DISMISSED
Case No. 8:21-CV-00406-JLS-ADS

4840-4699-9791

*Rimini St., Inc. v. Oracle Int'l Corp.*,
    473 F. Supp. 3d 1158 (D. Nev. 2020) ........................................................................ 7

*Stanson v. Mott*
    17 Cal. 3d 206 (1976) .............................................................................................. 10

*Viacom Int'l Inc. v. MGA Ent., Inc.*,
    No. CV 16-9618-R, 2017 WL 3000011 (C.D. Cal. June 15, 2017) .......................... 9

<u>Rules</u>

Federal Rules of Civil Procedure Rule 12(b)(6) ............................................................ 10

iii

IN-N-OUT BURGERS' RESPONSE TO ORDER TO SHOW CAUSE
WHY THIS ACTION SHOULD NOT BE DISMISSED
Case No. 8:21-CV-00406-JLS-ADS

4840-4699-9791

Pursuant to this Court's June 15, 2021 Order [Dkt. No. 29], Plaintiff In-N-Out Burgers submits this response to the order to show cause as to why this action should not be dismissed.

## I. INTRODUCTION.

Zurich misled this Court in asserting that the present action ("Action 2") should be dismissed on the basis that it involves claim splitting of the claims at issue in related case No. 8:20-cv-01000-JLS-ADS ("Action 1"). It is well-established under both California law and federal law that there is a bright line rule prohibiting the application of the doctrine of claim preclusion (and, by extension, claim splitting) to claims that arise after the filing of the complaint in the first action. Here, all claims in Action 2 arose after In-N-Out filed its complaint in Action 1. Specifically, Action 1 and Action 2 involve breaches of two separate insurance policies: Action 1 arises from Zurich's breach of the 2019/2020 policy, whereas Action 2 arises from Zurich's later breach of the next year's policy, the 2020/2021 policy. The 2020/2021 policy was not in effect at the time In-N-Out filed Action 1, and it had been in effect for only a week when In-N-Out filed its first amended complaint in Action 1. Zurich did not breach the 2020/2021 policy until seven months later, thus first giving rise to In-N-Out's claims in Action 2. The fact that the two claims involve separate breaches related to the same general subject matter – coverage for COVID-19 related losses — does not bar subsequent claims that arose after the filing of the complaint in the first action.

Where claims arise from breaches of two separate but even related contracts, claims under the first contract do not preclude a separate action for breaches of the second contract, irrespective of the accrual date of these claims. Further, Action 2 involves insured locations that did not exist when the 2019/2020 policy was in force, and thus could not be subject to coverage under that policy.

In any event, the appropriate remedy here is consolidation of Actions 1 and 2, which this Court has broad discretion to order. Consolidation is especially appropriate here where In-N-Out has tried to promote judicial economy and avoid expensive

1

4840-4699-9791

IN-N-OUT BURGERS' RESPONSE TO ORDER TO SHOW CAUSE
WHY THIS ACTION SHOULD NOT BE DISMISSED
Case No. 8:21-CV-00406-JLS-ADS

litigation by first seeking Zurich's consent to allow In-N-Out to amend its Action 1 complaint to add its new claims (which it was allowed but not required to do), and second, after Zurich refused In-N-Out's request, by filing a new action, filing a notice of related cases, and then filing In-N-Out's pending motion to consolidate Actions 1 and 2 for all purposes. Further, consolidation will minimize any purported burden on Zurich.

Based on the foregoing, In-N-Out respectfully asserts that dismissal is not warranted in this action, as no claim splitting has occurred, and this Court should instead consolidate Actions 1 and 2 for all purposes.

## II.   STATEMENT OF FACTS

On May 29, 2020, In-N-Out filed its initial complaint in Case No. 8:20-cv-01000-JLS-ADS) ("Action 1"). [Action 1 Dkt. No. 1]. On June 9, 2020, In-N-Out filed its First Amended Complaint ("FAC") in Action 1. Compl. ¶ 2. Action 1 asserts claims related to Zurich's breach of the insurance policy it sold to In-N-Out for the June 1, 2019 to June 1, 2020 policy period (the "2019/2020 Policy"), policy No. MLP 9137890-13. Compl. ¶¶ 3, 6.

On January 28, 2021, In-N-Out sought Zurich's agreement to amend or supplement In-N-Out's complaint in Action 1 to include claims that arose after the filing of both In-N-Out's initial complaint and FAC. Compl. ¶ 4. Specifically, In-N-Out sought to assert claims for breach of a separate insurance policy—the next year's policy, No. MLP 9137890-14, that came into effect on June 1, 2020 (the "2021/2020 Policy"), after In-N-Out filed its initial complaint in Action 1. *Id.* at ¶ 6. In-N-Out also sought to include losses stemming from new store locations that opened after In-N-Out filed its initial complaint and FAC in Action 1, and after the expiration of the 2019/2020 Policy at issue in Action 1 such that they could not be covered under the earlier policy. *Id*. at ¶¶ 3, 55. In-N-Out also sought to include allegations of new factual data that did not exist at the time of the filing of either Action 1 complaint, including that the presence of the virus at In-N-Out properties exploded so that nearly

2

5,000 Associates, at nearly 100% of its locations, had confirmed COVID-19 diagnosis and had been on the property while infected. *Id*. at ¶¶ 3, 92. Zurich refused to agree to an amendment. *Id*. at ¶ 4.

As part of its effort to obtain Zurich's consent to an amendment of the FAC in Action 1, In-N-Out gave notice to Zurich under the 2020/2021 policy on January 28, 2021. *Id*. at ¶¶ 7, 92. On February 5, 2021 In-N-Out also submitted a notice of loss via its broker under the 2020/2021 Policy. *Id*. On February 8, 2021 Zurich provided its written position via counsel that there is no coverage under the 2020/2021 Policy regardless of the new allegations, thereby denying coverage and breaching the 2020/2021 Policy. *Id.* at ¶¶ 7, 92.

On March 3, 2021, In-N-Out filed the present second coverage lawsuit against Zurich ("Action 2") asserting claims for breach of the 2020/2021 Policy, as well as losses from the new stores, and factual allegations regarding the increased presence of COVID-19 on its properties. *See e.g., id*. at ¶¶ 3, 6. In-N-Out filed a notice of related cases in Action 1 [Action 1 Dkt. No. 36] and Action 2 [Dkt. No. 6]. This Court ordered Action 2 related to Action 1 and transferred Action 1 to this Court. [Dkt. No. 12]. On April 12, 2021 In-N-Out filed a motion to consolidate Action 1 and 2 for all purposes. [Action 1 Dkt. No. 44].

On June 4, 2021 the parties filed their Joint Rule 26(f) Report [Dkt. No. 27], where Zurich impermissibly turned the report into a motion to dismiss and misleadingly asserted that In-N-Out's Action 2 was impermissible claim splitting.

### III. CHOICE OF LAW

California law applies here "because federal courts apply state preclusion law in analyzing the preclusive effect of a prior federal diversity" case. *Pollok v. Vanguard Fiduciary Tr. Co.,* 803 F. App'x 67, 68 (9th Cir. 2020). Federal courts apply "the law that would be applied by state courts in the State in which the federal diversity court sits." *Id.* Action 1 is a federal diversity case and this Court sits in California, thus California preclusion law applies.

3

IN-N-OUT BURGERS' RESPONSE TO ORDER TO SHOW CAUSE
WHY THIS ACTION SHOULD NOT BE DISMISSED
4840-4699-9791                                            Case No. 8:21-CV-00406-JLS-ADS

While California law applies, as explained below the result would be the same under federal preclusion law: there was no claim splitting in this case.

## IV. ARGUMENT

### A. California's Bright Line Rule Prohibiting the Application of Claim Splitting to Claims Arising After the Filing of the Initial Complaint in the First Action Warrants No Dismissal

Here, the timing of when the claims in the second action arose is decisive. "The rule prohibiting a plaintiff from splitting a cause of action into several suits is likewise an application of claim preclusion principles." *Hong Sang Mkt., Inc. v. Peng*, 20 Cal. App. 5th 474, 490 (2018); *accord Pollok v. Vanguard Fiduciary Tr. Co.,* 803 F. App'x 67, 69 (9th Cir. 2020) (applying California's claim preclusion rules to conduct claim splitting analysis). For the purposes of claim preclusion, also known as res judicata, "California law identifies a single cause of action as the violation of a single primary right." *Planning & Conservation League v. Castaic Lake Water Agency*, 180 Cal. App. 4th 210, 227 (2009), *as modified on denial of reh'g* (Jan. 14, 2010).

Under California law, "[a]s a cause of action is framed by the facts in existence when the underlying complaint is filed, res judicata 'is not a bar to claims that arise after the initial complaint is filed.'" *Id.* (internal quotations omitted); *accord Allied Fire Protection v. Diede Constr., Inc.,* 127 Cal. App. 4th 150, 155 (2005) ("Res judicata is not a bar to claims that arise after the initial complaint is filed."); *L.A. Branch NAACP v. L.A. Unified Sch. Dist.,* 750 F.2d 731, 739 (9th Cir. 1984) (en banc) (holding California claim preclusion law does not bar claims arising after the filing of the initial complaint). "This exception to the doctrine encompasses claims based on rights that arise after the filing of the first action…" *Planning & Conservation League*, 180 Cal. App. 4th at 227. As the court in *Planning & Conservation League* explained:

> These rights may be asserted in a supplemental pleading, but if such a pleading is not filed a plaintiff is not foreclosed from asserting the rights in a subsequent action. [Citation.] The general rule that a judgment is conclusive as to matters that could have been litigated 'does not apply to new rights acquired pending the action which might have been, but which

4

were not, required to be[,] litigated [Citations].' [Citation.]" *Id.* at 227-228 (quoting *Allied Fire Protection*, Cal. App. 4th at 155). "There is no requirement to amend a complaint to add newly acquired claims." *Allied Fire Protection*, Cal. App. 4th at 155.

California's bright-line rule of claim preclusion not applying to any claims that arose after the filing of the initial complaint was explained by the court in *Allied Fire Protection*:

> Using the date of filing of the original complaint as the cut-off for determining what claims could have been brought results in a workable rule; otherwise, courts would get bogged down in determining whether an amendment was possible or practicable when the new claims arose.

*Allied Fire Protection*, Cal. App. at 4th at 155.

The fact that two actions involve separate episodes of misconduct arising out of the "same general subject matter," does not mean that they involved the same cause of action for claim preclusion purposes. *Planning & Conservation League,* 180 Cal. App. 4th at 228. In *Planning & Conservation League*, the court found that the first and second actions both related to the same general subject matter: the public's right to an adequate environmental impact report ("EIR"), but related to different EIRs, one that was issued after the first action was filed and thus not required to be litigated in it. *Id.* at 228-29. Therefore, the court held the first and second actions involved different causes of action for the purposes of claim preclusion. *Id.* at 228.

In the present case, all claims in Action 2 arose after In-N-Out filed its initial complaint in Action 1 and thus are not barred by California's doctrine against claim splitting. In-N-Out filed its initial complaint in Action 1 on May 29, 2020. [Action 1 Dkt. No. 1]. Action 1 is based on Zurich's breach of the 2019/2020 Policy. Compl. ¶ 4. Action 2 is based on Zurich's breach of a separate contract of insurance — the 2020/2021 Policy — which did not even come into effect until June 1, 2020, several days after In-N-Out filed its initial complaint in Action 1. *Id.* at ¶ 6. It follows that Zurich's breach of the 2020/2021 Policy, from which In-N-Out's Action 2 claims

5

arise, necessarily occurred after June 1 (and thus after In-N-Out's filing of its initial complaint in Action 1). Moreover, Zurich's actual breach of the 2020/2021 Policy that give rise to In-N-Out's Action 2 claims occurred at least seven months after In-N-Out filed both of its Action 1 complaints. Specifically, Zurich breached the 2020/2021 Policy on February 8, 2021 when it first denied coverage under that policy. *Id.* at ¶¶ 7, 92. Additionally, Action 2 involves coverage for new stores opened after Action 1 was filed, and after the 2019/2020 Policy expired such that they cannot be covered under that policy. *Id.* at ¶¶ 3, 55. Therefore, Actions 1 and 2 involve distinct causes of action and the doctrine against claim splitting does not apply here. The fact that In-N-Out could have sought leave of the Court to supplement its Action 1 FAC to add its newly acquired claims (and in fact requested Zurich's consent to do so) does not preclude it from asserting such claims in a separate action.

Further, the fact that Actions 1 and 2 involve separate breaches of separate policies arising out of the same general subject matter – insurance coverage for COVID-19 related losses— does not mean that they involve the same cause of action for California claim preclusion purposes. Rather, like in *Planning & Conservation League*, claims related to separate documents on the same general matter, one that was issued after the filing of the initial complaint in the first action and thus not required to be litigated in the first action, involve distinct causes of action.

**B.    Ninth Circuit Law is in Accord with California Law and Does Not Authorize Dismissal Here.**

Application of federal claim preclusion law leads to the same outcome: there is no claim splitting in this case. Similar to California, under federal law "[t]he doctrine against claim splitting borrow[s] from the test for claim preclusion, a facet of res judicata." *Pollok v. Vanguard Mktg. Corp.,* No. CV 18-1099-JLS (JCG), 2018 WL 6118602, at *3 (C.D. Cal. May 29, 2018) (internal quotation marks omitted)*, aff'd sub nom. Pollok v. Vanguard Fiduciary Tr. Co.,* 803 F. App'x 67 (9th Cir. 2020). Under federal claim preclusion law the primary— and determinative— question is whether

6

"two suits arise out of the same transactional nucleus of facts," which "is the same inquiry as whether the claim could have been brought in the previous action." *Howard v. City of Coos Bay*, 871 F.3d 1032, 1039 (9th Cir. 2017). To answer this question, similar to California law, federal claim preclusion law applies a bright line rule based on the timing of the accrual of claims in the second action. *Id.* at 1039-40. Specifically, "[a] recent Ninth Circuit case, *Howard v. City of Coos Bay*, 871 F.3d 1032, 1040 (9th Cir. 2017), established that there is a bright line rule prohibiting the application of the doctrine of claim preclusion (and, by extension, claim-splitting) to 'claims that accrue after the filing of the operative complaint.'" *Rimini St., Inc. v. Oracle Int'l Corp.*, 473 F. Supp. 3d 1158, 1191 (D. Nev. 2020); *see also Adams v. Cal. Dep't of Health Servs.*, 487 F.3d 684, 693 (9th Cir. 2007) (noting, prior to the bright line rule established in *Howard*, that it may be an abuse of discretion to dismiss claims in second suit that were based on events occurring after the first suit was filed) (overruled on other grounds).

"The Ninth Circuit has since interpreted the term 'accrue' from *Howard*, determining that it means to 'come into existence' or 'arise.'" *Rimini St., Inc.*, 473 F. Supp. 3d at 1021 (quoting *Media Rights Technologies, Inc. v. Microsoft Corp. ("Microsoft")*, 922 F.3d 1014, 1021 (9th Cir. 2019). "In other words, 'claim preclusion does not apply to claims that were not in existence and could not have been sued upon— *i.e.,* were not legally cognizable—when the allegedly preclusive action was initiated.'" *Id.* The Ninth Circuit held that this reading is consistent with its pre-*Howard* decisions. *Microsoft*, 922 F.3d at 1021 (citing and quoting *Frank v. United Airlines, Inc.,* 216 F.3d 845, 851 (9th Cir. 2000) ("A claim arising after the date of an earlier judgment is not barred, even if it arises out of a continuing course of conduct that provided the basis for the earlier claim.")).

In establishing that bright-line rule for federal claim preclusion, the Ninth Circuit in *Howard* noted that a number of other circuits have adopted such a rule, and the Supreme Court spoke approvingly of that line of cases, *Howard*, 871 F. 3d at

7

IN-N-OUT BURGERS' RESPONSE TO ORDER TO SHOW CAUSE
WHY THIS ACTION SHOULD NOT BE DISMISSED
Case No. 8:21-CV-00406-JLS-ADS
4840-4699-9791

1039-40. The Ninth Circuit reasoned that absent such a bright line rule, the court "would be left with the more difficult question of whether the plaintiff could have amended her complaint in the midst of litigation to add claims which accrued after filing." *Id.* at 1040. Such an approach "would only invite disputes" and "[g]iven the importance of 'certainty and predictability'" the Ninth Circuit held "a bright-line rule that only asks whether a claim could have been brought at the time the operative complaint in the prior suit was filed is appropriate." *Id.*

In an insurance specific context, this bright line rule has been applied to multiple breaches of the same insurance policy. In *Lennar Mare Island, LLC v. Steadfast Ins. Co.,* No. 212CV02182KJMKJN, 2016 WL 3197390, at *4 (E.D. Cal. June 8, 2016), plaintiff filed a case in 2012, followed by a second case in 2016. *Id.* at *1. Both cases related to breaches of a single insurance policy. *Id.* Both cases were pending when plaintiff filed a motion to consolidate the cases because they "involve the same policy, the same parties, and the same historical background" and defendant filed a motion to dismiss part of the second complaint as impermissibly duplicating the first case. *Id.* at 2. Relying on *Adams* and Second Circuit cases, the *Lennar Mare Island, LLC* court held that a "disappointed plaintiff may not relitigate the events underlying a previous judgment, but preclusion rules do not bar the "litigation of events arising after the filing of the complaint that formed the basis of the first lawsuit." *Id.* at *4. The court could not determine that the breaches alleged in the second action arose prior to the filing of the first action. *Id.* Therefore, it denied the insurer's motion to dismiss. *Id.*

Here, all of In-N-Out's claims in Action 2 arose after the filing of the complaint and FAC in Action 1. Specifically, whereas Action 1 filed on May 29, 2020 arose from Zurich's breach of the 2019/2020 Policy, Action 2 arises from breach of a different policy—the 2020/2021 Policy. The 2020/2021 Policy came into effect on June 1, 2020, eight days before In-N-Out filed the Action 1 FAC on June 9, 2020. That second contract was not breached until over seven months later on February 8,

8

IN-N-OUT BURGERS' RESPONSE TO ORDER TO SHOW CAUSE
WHY THIS ACTION SHOULD NOT BE DISMISSED
Case No. 8:21-CV-00406-JLS-ADS
4840-4699-9791

2021 when Zurich denied In-N-Out's claim under the 2020/2021 Policy. Therefore, the federal law bright line rule prohibiting the application of the doctrine of claim splitting applies to In-N-Out's claims in Action 2 since the claims in that action accrued after the filing of the complaint and FAC in Action 1.

Further, whereas in *Lennar Mare Island, LLC* the court deemed dismissal inappropriate for claims of a subsequent breach of the same policy that occurred after the filing of the first complaint – that reasoning applies with more force here where the breach at issue in Action 2 not only occurred after the filing of the Action 1 complaint and FAC, but also was a breach of a separate contract.

### C. Independent Claims Arising from Separate Breaches of Two Different Contracts Cannot Constitute Claim Splitting

In-N-Out cannot have engaged in claim splitting by bringing two lawsuits involving separate and independent breaches of two different contracts, irrespective of the accrual date of these claims. *Viacom Int'l Inc. v. MGA Ent., Inc.*, is instructive. No. CV 16-9618-R, 2017 WL 3000011 (C.D. Cal. June 15, 2017). In *Viacom Int'l Inc.*, defendant argued that plaintiff was barred from seeking relief for a breach of contract for claim splitting and/or claim preclusion on the basis that the "breach of contract in the instant litigation is based on the same primary right at issue in a breach of contract claim brought in the previous lawsuit." *Id*. at 1. The court rejected plaintiffs' assertation that the contracts were part of a collective "common plan" and held that "Defendant's contention that Plaintiff seeks relief under the same primary right is wrong." *Id*. at 2. This is because "[e]ach of these agreements gives rise to its own obligation or legal duty, enforceable in an action at law. Moreover, each individual agreement stands independent of the others—if one agreement were to be canceled, the others would remain in force." Therefore, despite a factual overlap between the separate agreements, "each agreement involves different primary rights and therefore gives rise to separate and independent causes of action." *Id*.

In-N-Out's two actions cannot constitute claim splitting because they arise out

9

IN-N-OUT BURGERS' RESPONSE TO ORDER TO SHOW CAUSE
WHY THIS ACTION SHOULD NOT BE DISMISSED
Case No. 8:21-CV-00406-JLS-ADS

4840-4699-9791

of two separate, independently enforceable, contracts pertaining to two different policy years. To hold otherwise would mean that a breach of the 2019-2020 policy constitutes a breach of all subsequent policy years. Rather, Action 1 applies to the 2019/2020 policy year and Action 2 applies to the 2020/2021 policy year. Joinder of these different causes of action is permissive because they involve different primary rights. *See Fujifilm Corp. v. Yang*, 223 Cal. App. 4th 326, 333–34 (2014). "That the two causes of action might have been joined in one lawsuit under our permissive joinder provisions [citation] does not prevent the plaintiff from bringing them in separate suits if he elects to do so." *Id*. (internal quotations omitted). "Under the 'primary rights' theory ... the significant factor is the harm suffered; that the same facts are involved in both suits is not conclusive." *Id*. (citations omitted); *see also Stanson v. Mott* 17 Cal. 3d 206, 213 (1976) ("a plaintiff is not required to join separate causes of action arising out of the same transaction ... "). In-N-Out was not required to bring two claims involving distinct breaches of separate contracts in one combined action.

**D.     In Any Event Consolidation is the Appropriate Remedy Here**

Even if the Court were to find that In-N-Out engaged in claim splitting, the Court has discretion with the applicable remedy. One available remedy, which In-N-Out is seeking already, is consolidation of Action 1 and Action 2. Specifically, "[o]rdinarily, prevailing on a Rule 12(b)(6) motion results in dismissal. Fed. R. Civ. P. 12(b)(6). But when ruling on a Rule 12(b)(6) motion addressing a claim splitting issue, courts have broad discretion with respect to the proper remedy, including dismissal, staying the action, enjoining the parties from proceeding with the second action, or consolidation." *In re Don Rose Oil, Inc.,* 614 B.R. 358, n. 7 (Bankr. E.D. Cal. 2020) citing *Restaurant Equipment Contracting, Inc. v. Makino*, 148 F. Supp.3d 1126, 1128 (D. Nevada 2015)).

If the Court were to find that In-N-Out's Action 2 implicates the doctrine against claim splitting, consolidation is the more appropriate remedy than dismissal.

10

IN-N-OUT BURGERS' RESPONSE TO ORDER TO SHOW CAUSE
WHY THIS ACTION SHOULD NOT BE DISMISSED
Case No. 8:21-CV-00406-JLS-ADS

4840-4699-9791

In-N-Out's Action 2 does not raise the concerns justifying dismissal articulated in *Adams*: to "protect the parties from vexatious and expensive litigation and to serve the societal interest in bringing an end to disputes." *Adams v. California Dep't of Health Servs.*, 487 F.3d 684, 693 (9th Cir. 2007). Here, In-N-Out timely brought Action 2, which had not accrued until after Action 1 had already been filed, for breach of a separate agreement. Action 2 does not simply contain belated additional causes of action stemming from the same primary right as Action 1. And In-N-Out is not seeking to make an end run around the Court's denial of a prior motion to amend. Additionally, Action 1 is still in its initial stages, where this Court has yet to make any substantive rulings. Further, In-N-Out is actively seeking to consolidate the two actions for purposes of efficiency. Zurich cannot reasonably oppose consolidation while simultaneously complaining of the burden of defending two separate actions.

## V. CONCLUSION

For the foregoing reasons, In-N-Out requests that the present Action 2 should not be dismissed, and instead this Court should order Actions 1 and 2 consolidated for all purposes.

Dated: June 22, 2021

PILLSBURY WINTHROP SHAW PITTMAN LLP

By: */s/ Robert L. Wallan*
Robert L. Wallan
Mariah L. Brandt
Attorneys for Plaintiff
IN-N-OUT BURGERS

11

IN-N-OUT BURGERS' RESPONSE TO ORDER TO SHOW CAUSE
WHY THIS ACTION SHOULD NOT BE DISMISSED
Case No. 8:21-CV-00406-JLS-ADS

4840-4699-9791